**KRAMER v WOLFE**

Ohio Appeals, 1st Dist, Hamilton Co

No 5483.   Decided November, 1938

John H. Doyle, Cincinnati, for appellant.

Clifford F. Cordes, Cincinnati, and Edwin J. Franks, Cincinnati, for appellee.

## OPINION

By HAMILTON, J.

This case is here on appeal on questions of law direct from the Municipal Court of Cincinnati.

Suit was brought by Kramer, the appellant here, against the defendant, the appellee, for a balance claimed to be due on a promissory note.

Defendant filed an answer and cross-petition, setting up the claimed over-payments on the note and the return of the money over-paid. The court found against the plaintiff on his petition, and in favor of the defendant on his cross-petition, and gave judgment for a small sum in favor of the defendant. From that judgment the appeal is prosecuted here, as above stated.

The case was submitted to the trial court, and is here, on the pleadings and the agreed statements of facts.

Kramer was duly licensed by the Division of Securities of the State of Ohio to do business under the Small Loan Act for the years 1928 to 1931, inclusive.

It is further disclosed by the agreed statement of facts that on December 19, 1928, defendant Wolfe executed to plaintiff Kramer a note in the sum of $500.00, for which defendant received cash. The note recited: "Payable in thirty days after date, until paid, * * * (It being agreed that upon default in payment of any one of said installments or payments when the same becomes due, the entire amount remaining unpaid to become immediately due and payable) with a charge (including interest) of three per cent per month on the unpaid balance of the amount loaned."

At the time of the execution of the note, the plaintiff, Kramer, gave to Wolfe a statement concerning the transaction, as required by the code.

It is further stipulated that the defendant Wolfe has paid up to and including June 5, 1937 the sum of $917.00 to plaintiff in installments, as set out in the list of payments, all of which payments were credited by the plaintiff as interest on said note. A copy of the list of payments was attached to the agreed statement of facts and to the pleadings.

The defendant's contention is that the note as a 3% per month note was payable in thirty days from date, and after the expiration of the thirty days, the note was reduced to a simple, ordinary note at the legal rate of interest at 6% per annum. If this were correct, the payments made would morally discharge the debt.

If the law is, that the interest charge of 3% per month continued at least until the date of the judgment in the case, then there would be a balance due on the note.

It will be noted that Kramer's Small Loan License expired in 1931, and was not renewed by him.

Defendant contends that the date the note was due was January 18, 1929, and any payments thereafter in excess of 6% interest per annum should be credited to principal on the note.

Defendant further contends that Kramer was not licensed after December 31, 1931, and that any payments in excess of the legal rate of interest thereafter should be credited on account of principal of the loan.

It was further argued and it is argued in the brief that the Small Loan Statute was changed in 1929, sometime subsequent to the making of the loan and the giving of the note, wherein the amount authorized by the Small Loan Statute was reduced from $500 to $300, and that this statute would apply, and if there was any liability that the 3% per month charge could only be effective as against the $300 limited by the statute.

A similar case to the one under consideration was decided by the Court of Appeals of the 8th District in March, 1935, entitled **Ohio Loan Co. v Porychuk,** reported in **19 Abs 278.**

It must be borne in mind that this charge of interest at 3% per month is a creature of statute, but as was said by the Supreme Court in **State ex rel v Powers, 125 Ohio St 108,** the General Code provides for a maximum interest charge of 3% per month. For those who can borrow at 6% per annum this seems oppressive and even shocking. The Supreme Court upheld the constitutionality of the act. Therefore, nothing is left for this court to do but decide the law as it now stands, leaving to the legislature to correct any evils that may follow the legal authority.

Conceding that the note was a thirty day note, what rate of interest does the unpaid balance bear after the expiration of the first thirty days?

At the time of making the contract, it was stipulated that Kramer was duly licensed to loan money at 3% per month under the Code, and that his license expired three years later.

In the Porychuk case, the Court of Appeals states:

"It is our understanding that the law is well established that a valid contract entered into by the terms of which the borrower agrees to pay a rate authorized by law the loan carries that rate both before and after maturity."

The parties acted under the authority of the statute as it existed at the time that plaintiff loaned defendant the $500, and the contracting parties must have thoroughly understood that the loan carried interest at 3% per month until paid. Those were the provisions of the contract. On this question, we have the case of **Kilgore v Emmitt, 33 Oh St 410.** The Kilgore case bears particularly on the question of the effect of the amendment of the Code with reference to the amount authorized. The law at the time of the execution of the note in the Kilgore case permitted a charge of 10% interest per annum. The law was later changed, reducing the legal rate of interest to 8%. After the law reducing the legal rate to 8% was enacted the note reciting 10% interest was superseded by substituting a new note, and it was claimed that the new note could not draw in excess of the legal rate of interest. The Supreme Court held that after repealing of the 10% per annum law, the new note, substituted in the exact terms of the old note, leaving off the credits so put upon the note, would not affect the rate of interest, if it clearly appeared there was no intention or device used to evade the provisions of the statute regulating the then present rate of interest. In other words, the note, notwithstanding the statute, the rate that was made illegal by subsequent statute, would not affect the rate named in the contract or note, even if a new note were substituted.

The case under consideration does not go that far, since the note in question is the original note.

23 O. Jur., §§16 and 17, deals with rate of interest. In §17, p. 21, it is stated:

"Interest is determined by the law in existence at the time of the contract; where there has been a change in the rate of legal interest as declared by statute it is well settled that such a change cannot be retroactive, and that the rate which was legal ■■■■■■■ ■ at the time the obligation was incurred will hold when the obligation matures, notwithstanding such change. This is true whether the change in the statute authorizes an increase, or a decrease in the legal rate."

This proposition would bear on the claim that after thirty days the note, under the law, could not draw interest in excess of the legal rate of 6% per annum. Bearing directly on this question is the case of **Monnett v Sturges, 25 Oh St 384,** wherein it is stated in the first paragraph of the syllabus:

"Under the act of March 14, 1850, allowing parties to contract for any rate of interest, not exceeding ten per cent, a note calling for interest at a rate higher than six per cent, carries the agreed rate after due, and until paid, as well as during the time it is made to run."

On this point, it may be well to call attention to §8304 **GC,** which section provides:

"Upon all judgments, decrees, or orders, rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with the provisions of the next preceding section, interest shall be computed till payment at the rate specified in such instrument."

In other words, the trend of this provision in the act is in line with the decisions holding that the rate of interest stipulated in the contract carries through to the payment, or, at least, until judgment is had upon the note.

It will be borne in mind that in the instant case the note itself provides for payment of interest at the rate of three per cent. per month after maturity. The date of maturity of the note, then, would have no legal effect on the running of the interest rate.

Upon the payments being made, the owner and holder of the note had the option of crediting the payments upon the interest or the principal. In this case, he saw fit to credit the payments toward the 3% per month interest charges, and the payments were not sufficient to more than discharge the interest.

In the case of **Hydraulic Co. v Chatfield, 38 Oh St 575,** it was held:

"Assuming that these bonds are silent as to the rate of interest they shall bear after maturity, if they contain a stipulation for ten per cent before maturity, then the principal after maturity until judgment, * * * will bear ten per cent interest."

In 15 R. C. L., §17, page 19, it is stated:

"Interest follows the contract according to the law in existence at the time and place of the contract, or of the performance of it, **and where there has been a change in the rate of legal interest as declared by statute it is well settled that such a change cannot be retroactive,** and that the rate which was legal at the time the obligation was incurred will hold when the obligation matures, notwithstanding changes of statute in the interim."

With reference to the effect upon the right to collect the contract rate of interest, of Kramer's failure to renew his license, we find the rule of law announced in 17 R. C. L., §72, p. 558, as follows:

"As to whether one who defaults in the payment of a license tax on his business may recover on a contract growing out of such business, the au-

thorities generally turn on  the question as to the nature of the act itself and the character of the prohibition against such act. Perhaps the better and more reasonable rule is that, where prohibition of the business is implied from a penalty imposed and there is no declaration in the statute making the prohibited act void, the doing of such act is not illegal, and a recovery may be had on the contract."

In addition to the cases cited in the footnotes supporting the above rule, we find two cases in point. South Shreveport Finance & Loan Co. v Stephenson, 168 Southern Rep. 100, and Continental Finance Corporation v Warren, et al, 160 Atl. Rep. 87. These cases bear directly on the point that the prohibition must be found in the statutes.

In the Stephenson case, the court denied the right of plaintiff to recover the contract rate of 3½% interest per month, for the reason that his license had expired, and the act provided the lender shall not "* * * receive a greater rate of interest than 8% per annum" without first obtaining a license.

There is no provision in our statutes regarding the collection of interest. The prohibition in our statutes is: "It shall be unlawful for any person * * * to engage or continue in the business of making loans * * * at a rate of interest in excess of 8% per annum * * * without first having obtained a license so to do, etc."

In the Warren case, supra, the Supreme Court of New Jersey held that the collection of interest and the bringing of the suit on the note was not "engaging in the business" within the meaning of the statutes. Our statute dies not go as far as the New Jersey statutes in its inhibition.

The loan in the instant case having been legally made, Kramer does not forfeit his right to collect the rate of interest contracted for by reason of his failure to renew his license, there being no prohibition in the statutes against it.

Since the law permits Kramer to charge the contract rate of 3% interest per month, all that remains to be determined is the mathematical calculation of the balance due at that rate on the note in suit; all payments having been agreed upon.

The judgment is reversed and judgment may be entered here in favor of the appellant for the amount correctly calculated.

ROSS, PJ. & MATTHEWS, J., concur.